(COMMON LAW.)

## WELCH v. MANDEVILLE.

A nominal plaintiff, suing for the benefit of his assignee, cannot, by a dismissal of the suit under a collusive agreement with the defendant, create a valid bar against any subsequent suit for the same cause of action.

ERROR to the circuit court for the district of Columbia for Alexandria county. This was an action of covenant brought in the name of Welch (for the use of Prior) against Mandeville and Jamieson. The suit abated as to Jamieson by a return of no inhabitant. The defendant, Mandeville, filed two pleas. The second plea, upon which the question in this court arises, states, that, on the 5th of July, 1806, James Welch impleaded Mandeville and Jamieson, in the circuit court of the district of Columbia, for the county of Alexandria, in an action of covenant, in which suit such proceedings were had, that, afterwards, to wit, at a session of the circuit court, on the 31st day of December, 1807, " the said James Welch came into court and acknowledged that he would not farther prosecute his said suit, and from thence altogether withdraw himself." The plea then avers, that the said James Welch, in the plea mentioned, is the same person in whose name the present suit is brought, and that the said Mandeville and Jamieson, in the former suit, are the same persons who are defend-

ants in this suit, and that the cause of action is the same in both suits. To this plea the plaintiff filed a special replication, protesting that the said James Welch did not come into court and acknowledge that he would not farther prosecute the said suit and from thence altogether withdraw himself; and avers that James Welch, being indebted to Prior, in more than 8,707 dollars and 9 cents, and Mandeville and Jamieson being indebted, by virtue of the covenant in the declaration mentioned, in 8,707 dollars and 9 cents, to Welch, he, Welch, on the 7th of September, 1799, by an equitable assignment, assigned to Prior, for a full and valuable consideration, the said 8,707 dollars and 9 cents, in discharge of the said debt, of which assignment the replication avers Mandeville and Jamieson had notice. The replication farther avers, that the suit in the plea mentioned was brought in the name of Welch, as the nominal plaintiff for the use of Prior, and that the defendant, Mandeville, knew that the said suit was brought, and was depending for the use and benefit of the said Prior; and that the said suit in the plea mentioned, without the authority, consent, or knowledge of the said Prior, or of the attorney prosecuting the said suit, and without any previous application to the court, was " dismissed, agreed." The replication farther avers, that the said James Welch was not authorized by the said Prior to agree or dismiss the said suit in the plea mentioned; and that the said Joseph Mandeville, with whom the supposed agreement for the dismissal of the said suit was made, knew, at the time of making the said supposed agree-

ment, that the said James Welch had no authority from Prior to agree or dismiss said suit. The replication farther avers, that the said agreement and dismissal of the said suit were made and procured by the said Joseph Mandeville, with the intent to injure and defraud the said Prior, and deprive him of the benefit of the said suit in the plea mentioned. The replication also avers, that the said Prior did not know that the said suit was dismissed until after the adjournment of the court at which it was dismissed ; and, farther, that the supposed entry upon the record of the court in said suit, that the plaintiff voluntarily came into court and acknowledged that he would not farther prosecute his said suit, and from thence altogether withdraw himself, and the judgment thereupon was made and entered by covin, collusion, and fraud ; and that the said judgment was, and is, fraudulent. To this replication the defendant filed a general demurrer, and the replication was overruled. It appeared by the record of the suit referred to in the plea, that the entry is made in these words : " *This suit is dismissed, agreed*," and that this entry was made by the clerk without the order of the court, and that there is no judgment of dismissal rendered by the court, but only a judgment refusing to reinstate the cause.

The cause was argued by *Lee*, for the plaintiff, and *Swann*, for the defendant.

STORY, J., delivered the opinion of the court.

The question upon these pleadings comes to this, whether a nominal plaintiff, suing for the benefit of

March 11th.

his assignee, can, by a dismissal of the suit under a collusive agreement with the defendant, create a valid bar against any subsequent suit for the same cause of action.

Courts of law, following in this respect the rules of equity, now take notice of assignments of choses in action, and exert themselves to afford them every support and protection not inconsistent with the established principles and modes of proceeding which govern tribunals acting according to the course of the common law. They will not, therefore, give effect to a release procured by the defendant under a covenous combination with the assignor in fraud of his assignee, nor permit the assignor injuriously to interfere with the conduct of any suit commenced by his assignee to enforce the rights which passed under the assignment. The dismissal of the former suit, stated in the pleadings in the present case, was certainly not a *retraxit;* and if it had been, it would not have availed the parties, since it was procured by fraud. Admitting a dismissal of a suit, by agreement, to be a good bar to a subsequent suit, (on which we give no opinion,) it can be so only when it is *bona fide,* and not for the purpose of defeating the rights of third persons. It would be strange indeed, if parties could be allowed, under the protection of its forms, to defeat the whole objects and purposes of the law itself.

It is the unanimous opinion of the court, that the judgment of the circuit court, overruling the replication to the second plea of the defendant, is errone-

ous, and the same is reversed, and the cause remanded for farther proceedings.

Judgment reversed.[a]

a By the common law, choses in action were not assignable, except to the crown. The civil law considers them as, strictly speaking, not assignable ; but, by the invention of a fiction, the Roman jurisconsults contrived to attain this object. The creditor who wished to transfer his right of action to another person, constituted him his attorney, or *procurator in rem suam*, as it was called; and it was stipulated that the action should be brought in the name of the assignor, but for the benefit and at the expense of the assignee. *Pothier de Vente*, No. 550. After notice to the debtor, this assignment operated a complete cession of the debt, and invalidated a payment to any other person than the assignee, or a release from any other person than him. Ib. 110. 554. *Code Napoleon*, liv. 3. tit. 6. *De la Vente*, c. 8. s. 1690. The court of chancery, imitating, in its usual spirit, the civil law in this particular, disregarded the rigid strictness of the common law, and protected the rights of the assignee of choses in action. This liberality was at last adopted by the courts of common law, who now consider an assignment of a chose in action as substantially valid, only preserving, in certain cases, the form of an action commenced in the name of the assignor, the beneficial interest and control of the suit being, however, considered as completely vested in the assignee as *procurator in rem suam*. See 4 *T. R.* 340. Master v. Miller. 1 *Johns. C.* 411. Andrews v. Beecker. 3 *Johns. C.* 242. Bates v. New-York Insurance Company. 1 *Johns. R.* 532. Wardell v. Eden, *in notis.* 3 *Johns. R.* 426. Carver v. Tracy. 11 *Johns. R.* 47. Raymond v. Squire. 4 *Johns. R.* 406. Van Vechten v. Greves. 12 *Johns. R.* 276. Westor v Barker.